United States District Court
Southern District of Texas

**ENTERED**

May 27, 2026

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| SEILLER MATOS CARMENATY,<br>　　　　Petitioner, | §<br>§<br>§<br>§<br>§ | CIVIL ACTION NUMBER<br>4:26-cv-01614 |
| versus | §<br>§<br>§ | JUDGE CHARLES ESKRIDGE |
| MARTIN FRINK,<br>　　　　Respondent. | §<br>§<br>§ | |

**OPINION AND ORDER ON DISMISSAL**

Pending is a petition by Petitioner Seiller Matos Carmenaty for a writ of *habeas corpus*. Dkt 1. She is a citizen of Cuba who presented herself at a port of entry on April 23, 2024, and was paroled into the United States for one year under 8 USC §1182(d)(5)(A). Id at ¶1. On September 19, 2025, five months after her parole expired, she was taken into ICE custody. Id at ¶¶3–4.

She challenges her present detention for three reasons, being (i) the government's conduct after expiration of her parole was "wholly inconsistent" with its current position that she is subject to mandatory detention under 8 USC §1225(b), (ii) her continued detention without an individualized custody determination violates procedural due process, and (iii) the current pause on adjudicating applications for adjustment of status under the Cuban Adjustment Act (under which she has a pending application) effectively subjects her to indefinite detention. Id at ¶6.

Pending also is a motion by the Government for summary judgment. Dkt 9. It maintains Petitioner is subject to mandatory detention as an "applicant for admission" under §1225(b)(1), or alternatively, under

§1225(b)(2). Id at 3–4. It also argues that procedural due process doesn't require an individualized custody determination in this context, and that any arguments regarding Petitioner's application under the Cuban Adjustment Act fall outside the jurisdictional scope of inquiry on *habeas corpus*. Id at 5–9.

Petitioner on reply argues in the main that her detention, which now exceeds six months, violates due process as interpreted by *Zadvydas v Davis*, 533 US 678, 701 (2001). Dkt 10 at 2–5. She also maintains that the Government failed to adequately address claims arising from her prior parole. Id at 5–7.

Section 1225(a)(1) of Title 8 to the United States Code deems an "applicant for admission" to be any alien who "arrives in the United States" or "is present" in this country but "has not been admitted." A so-defined *applicant for admission* may fall into one of two categories, as provided for by §1225(b)(1) and §1225(b)(2). The former is pertinent here.

Section 1225(b)(1) concerns the "[i]nspection of aliens arriving in the United States." By its terms, it "applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Jennings v Rodriguez*, 583 US 281, 287 (2018), citing §1225(b)(1)(A)(i). An alien otherwise subject to detention under §1225(b)(1) may be "paroled into the United States" under §1182(d)(5)(A). The Fifth Circuit observes that, "when an alien is granted parole, immigration authorities temporarily allow the alien access to the country while his or her application for admission is pending, though the alien is explicitly not considered 'admitted' while in this condition." *Duarte v Mayorkas*, 27 F4th 1044, 1058 (5th Cir 2022), citing 8 USC §1101(a)(13)(B); 8 USC §1182(d)(5)(A). Put differently, "parole creates something of legal fiction; although a paroled alien is physically allowed to enter the country, the legal status of the alien is the same as if he or she were still being held at the border waiting for his or her application for admission to be granted or denied." *Duarte*, 27 F4th at 1058. And upon termination of parole, a paroled

2

alien "shall forthwith return or be returned to the custody from which he was paroled and . . . shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 USC §1182(d)(5)(A).

Here, at the time of Petitioner's parole, she was subject to mandatory detention under §1225(b)(1) because she was an alien "arriving in the United States" deemed inadmissible under 8 USC §1182(a)(7)(A)(i)(I) for lack of valid entry documentation. See 8 USC §1225(b)(1)(A)(i); see also Dkt 9-1 (notice to appear). Parole designation didn't confer legal status upon her. See 8 USC §1182(d)(5)(A): "[P]arole of such alien shall not be regarded as an admission of the alien." As such, upon expiration of parole, Petitioner returned to her pre-parole status—an alien "arriving in the United States" subject to mandatory detention under §1225(b)(1).

For that reason, Petitioner's current detention isn't unlawful. Her arguments to the contrary aren't persuasive.

*As to claim one,* Petitioner's parole expired on April 18, 2025, five months *before* she was taken into ICE custody. Even so, she maintains that her arrest in September 2025 was unlawful because the Government purportedly failed to comply with the parole framework set forth in 8 CFR §212.5(e)(1)(ii). Dkt 1 at ¶¶36–39. Under that regulation, "Parole shall be automatically terminated without written notice . . . at the expiration of the time for which parole was authorized." See *Bouchikhi v Holder*, 676 F3d 173, 179 (5th Cir 2012). But "when a non-departed alien's parole automatically terminates [under 8 CFR §212.5(e)(1)(ii)], DHS is obliged to either re-parole him or commence removal proceedings." Ibid.

Petitioner maintains that the Government failed to comply with these post-termination obligations by "[taking] no action whatsoever [against her] for five months," which she contends to mean in turn that her September arrest was unlawful. Dkt 1 at ¶¶36–39. This fails to warrant relief on *habeas* for two reasons.

3

First, the Government's post-termination obligations have no bearing on the dispositive fact here, being that Petitioner's parole lawfully terminated without notice on April 18, 2025. See *Bouchikhi*, 676 F3d at 179 (holding that failure to comply with post-termination requirements set forth in 8 CFR §212.5(e)(1)(ii) "does not affect when the parole terminates"). This means that, as of April 18, 2025, Petitioner reverted to her pre-parole status as an alien "arriving in the United States" subject to mandatory detention under §1225(b)(1).

Second, and in any event, Petitioner acknowledges that removal proceedings had been initiated against her *before* her parole expired. Dkt 1 at ¶38. As such, there wasn't any regulatory deficiency in that regard. Nothing in the parole regulations suggests that Petitioner's present detention under §1225(b)(1) is unlawful.

Petitioner also argues that the Government's post-parole-termination conduct undermines its position that she is subject to mandatory detention. Dkt 1 at ¶¶40–42. She notes that (i) her employment authorization remained in effect after parole was terminated, and (ii) the Government accepted her application for adjustment of status under the Cuban Adjustment Act in June 2025. Id at ¶41. But neither the employment authorization, the filing of her adjustment-of-status application, nor any non-enforcement following parole termination affirmatively granted Petitioner lawful status in the United States or created, as asserted, any "reasonable expectation of continued authorized status." Id at ¶42. To the contrary, Petitioner was on notice that her one-year parole would (and did) expire on April 18, 2025, which meant the law considers her an alien "arriving in the United States" under §1225(b)(1).

Petitioner also argues that her detention is unlawful because "the *purpose* of [her] parole had not been accomplished at the time of her arrest." Id at ¶¶43–44. This argument fails at the outset. Petitioner acknowledges that 8 CFR §212.5(e) contains two distinct grounds for termination of parole. Id at ¶44. As relevant here,

4

§212.5(e)(1) provides, "Parole shall be automatically terminated without written notice . . . at the expiration of the time for which parole was authorized . . . ." By contrast, §212.5(e)(2) provides, "In cases not covered by paragraph (e)(1) . . ., upon accomplishment of the purpose for which parole was authorized . . . parole shall be terminated upon written notice to the alien . . . ." Only under (e)(2) is the phrasing "accomplishment of the purpose for which the parole was authorized" pertinent. But Petitioner's parole here automatically expired pursuant to (e)(1). Inquiry as to the purpose of parole under (e)(2) isn't applicable.

*As to claim two,* Petitioner contends that procedural due process "prohibits the government from detaining her . . . without any individualized hearing." Dkt 1 at ¶50. The undersigned has previously determined that procedural due process doesn't require an individualized custody determination beyond the mandate of 8 USC §1225(b)(2)(A). *Penafiel Clavijo v Thompson,* 2026 WL 923310 (SD Tex). While *Penafiel Clavijo* in particular addressed mandatory detention under a related provision, the same analysis applies to mandatory detention under §1225(b)(1) and forecloses this claim.

*As to claim three,* Petitioner maintains that the Government's alleged pause on adjudication of Cuban Adjustment Act applications effectively renders her indefinitely detained in violation of the Due Process Clause and the Cuban Adjustment Action. Dkt 1 at ¶¶57–62. She primarily relies on *Zadvydas v Davis* for the point that detention with "no obvious termination point" raises constitutional concerns. Id at ¶57, citing 533 US at 697.

The argument to some extent asserts a claim with respect to substantive due process and the duration of detention. The undersigned has previously determined that *Zadvydas*, which is a statutory interpretation decision regarding the *post*-removal order statute of 8 USC §1231(a)(6), has no bearing on *pre*-removal order detention under 8 USC §1225(b). *Herrera Estrada v Thompson,* 4:26-cv-01238, at 5–6 (SD Tex, Apr 27, 2026). In this context, the Supreme Court holds, "Detention during removal

5

proceedings is a constitutionally permissible part of that process." *Demore v Kim*, 538 US 510, 531 (2003). As such, the Supreme Court "opted for a bright-line rule" in *Demore* that "the government can detain an alien for as long as deportation proceedings are still '*pending*.'" *Banyee v Garland*, 115 F4th 928, 933 (8th Cir 2024) (emphasis in original).

Petitioner states that she has been detained for what is now eight months. Dkt 1 at ¶26. She acknowledges that removal proceedings remain pending, meaning that her detention doesn't yet violate substantive due process under prevailing authority. Id at ¶18. Argument regarding the anticipated timeline for adjudication of her Cuban Adjustment Act application is speculative and doesn't undermine the lawfulness of her detention.

It is noted in addition that arguments as to the Cuban Adjustment Act are presented to the wrong court. "Simply stated, habeas is not available to review questions unrelated to the cause of detention. Its sole function is to grant relief from unlawful imprisonment or custody and it cannot be used properly for any other purpose." *Pierre v United States*, 525 F2d 933, 935–36 (5th Cir 1976). The United States Citizenship and Immigration Services has exclusive "jurisdiction to adjudicate an application for adjustment of status filed by any alien," except in narrow circumstances not present here. See 8 CFR §1245.2(a)(1). To the extent Petitioner seeks to challenge any delay in the processing of such application, it appears that the proper vehicle lies, if anywhere, under 5 USC §706(1). See Dkt 9 at 9.

The motion by the Government for summary judgment is GRANTED. Dkt 9.

The petition for writ of *habeas corpus* by Petitioner Seiller Matos Carmenaty is DENIED. Dkt 1.

All other pending motions are DENIED AS MOOT.

This action is DISMISSED WITH PREJUDICE.

A final judgment will enter separately.

6

SO ORDERED.

Signed on ___May 27, 2026___ , at Houston, Texas.

_____

Honorable Charles Eskridge
United States District Judge